

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

RLC:NR
F.#2010R01079

*271 Cadman Plaza East*

*Brooklyn, New York  11201*

July 5, 2012

**BY HAND DELIVERY and ECF**

The Honorable Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

      Re:  United States v. Lawrence DiCristina
           Criminal Docket No. 11-414 (S-2) (JBW)

Dear Judge Weinstein:

    The government writes in response to the defendant's motion to dismiss the second superseding indictment (the "Superseding Indictment") in the above-referenced case.  For the reasons set forth below, the defendant's Motion and Memorandum of Law in Support of His Motion to Dismiss the Superseding Indictment ("Def. Motion"), filed with the Court on June 29, 2012, is without merit and should be denied.  Additionally, the government moves to preclude the proffered expert testimony of Randal Heeb.

I.      The Superseding Indictment

    The Superseding Indictment in this case charges the defendant with two crimes, Operating an Illegal Gambling Operation in violation of 18 U.S.C. § 1955 (hereinafter, the "Illegal Gambling Business Act" or "IGBA")(Count Two) and Conspiring to Operate an Illegal Gambling Operation in violation of 18 U.S.C. § 371 (Count One).  The defendant and his co-conspirator are charged with running "a gambling business involving illegal card games" at a location in Staten Island.  Superseding Indictment, ¶¶ 1, 3.  The Superseding Indictment identifies the defendant's overt act in furtherance of the conspiracy as instructing dealers to begin a poker game on or about February 17, 2011.  Id. at ¶ 2(a).  In connection with both Count One and Count Two, the defendant's conduct is alleged to have violated New York Penal Law §§ 225.05 and 20.00.

II.     The Defendant's Motion

Section 1955(a) states that "[w]hoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be [punished]." The statute further states that, as used in § 1955, "illegal gambling business" means:

> a gambling business which--
>
> (i) is a violation of the law of a State or political subdivision in which it is conducted;
>
> (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
>
> (iii) has been or remains in substantially continuous operation for a period in excess of thirty or has a gross revenue of $2,000 in any single day.

18 U.S.C. § 1955(b)(1). Additionally, the statute provides the following definition for gambling: "'gambling' includes but is not limited to poolselling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein." 18 U.S.C. § 1955(b)(2).

The defendant's motion focuses on Section 1955's language which prohibits the operation of an "illegal gambling business." The defendant argues that this phrase within the statute carries with it two distinct requirements: (i) that the charged conduct constitute operation of a "gambling business" and (ii) that the "gambling business" in question must be illegal under state law. See Def. Motion at 3-4.

The defendant does not argue that his operation of the poker game was legal under New York law. Instead, the defendant argues that poker does not constitute "gambling" within the meaning of the IGBA. He premises this argument on the idea that poker is different in nature from the non-exhaustive, illustrative list of activities that are identified as "gambling" in § 1955(b)(2). Specifically, the defendant contends that poker differs from the gambling activities identified in § 1955(b)(2) because those activities are games of pure chance and that they

2

are "house-banked" games in which the house plays against the bettor. Based on this purported distinction, the defendant alleges that the conduct charged in the Superseding Indictment does not violate the IGBA. See Def. Motion at 7-8. However, for the reasons set forth herein, this argument is supported by neither the statute nor relevant case law and the defendant's motion should be denied.

III.     Analysis

The government intends to prove at trial that the defendant's conduct violated Section 225.05 of the New York Penal Law, entitled "Promoting gambling in the second degree." This provision is contained within Article 225 of the New York Penal Law, entitled "Gambling Offenses." Nonetheless, the defendant contends that the defendant's actions in operating a poker game do not constitute "gambling" within the meaning of the IGBA.

As a threshold matter, it is well settled that poker is considered gambling under New York law. The court in People v. Turner succinctly summarized the issue:

> Gambling differs from other kinds of contests in that in gambling 'the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein.' Games of chance range from those that require no skill, such as a lottery to those such as poker or blackjack which require considerable skill in calculating the probability of drawing particular cards. Nonetheless, the latter are as much games of chance as the former, since the outcome depends to a material degree upon the random distribution of cards. The skill of the player may increase the odds in the player's favor, but cannot determine the outcome regardless of the degree of skill employed.

People v. Turner, 165 Misc. 2d 222, 223-24 (NY. City Crim. Ct. 1995). See also People v. Jun Feng, 946 N.Y.S.2d 68 (N.Y. City Crim Ct. 2012) (noting that "[t]here is no doubt that playing 'stud' poker for money is a game of chance and constitutes gambling," quoting People v. Dubinsky, 31 N.Y.S.2d 234, 237 (Ct. of Special Sessions 1941)); In re Fischer, 247 N.Y.S. 168, 178-79 (N.Y. App. Div. 1930) ("[A]ny game of cards for stakes is technically gambling ..."); cf. Katz's Delicatessen, Inc. v.

3

O'Connell, 302 N.Y. 286 (1951) (holding that the state liquor law's prohibition on "any gambling" was violated by social poker game in a licensed establishment).

The IGBA's plain language defines an "illegal gambling business" as a gambling business which is "a violation of the law of a State or political subdivision in which it is conducted...." 18 U.S.C. § 1955(b)(1)(i). Accordingly, for the IGBA to apply to a particular type of gambling business, the gambling business must operate in violation of the law of the state in which it is doing business. Here the defendant's poker game, operating in violation of the New York State Penal Law, constitutes an "illegal gambling business."

As noted above, the IGBA also includes a non-exclusive list of examples of activities that constitute "gambling." While the IGBA expressly states that the listed activities are exemplars and are not an exhaustive list of covered conduct, the defendant suggests that the list limits the scope of the IGBA only to gambling activities that are both (i) unlawful in the state where the gambling is conducted, and (ii) identical or at least similar to the games mentioned in the IGBA's list of examples. Def. Motion 3 and 4.

The crux of the defendant's argument has been previously advanced and rejected, both by the Third Circuit and by a district court in this Circuit. In United States v. Atiyeh, 402 F.3d 354 (3d Cir. 2005) the defendant sought to overturn his conviction based on the idea that the conduct for which he was convicted, becoming a custodian of funds that were wagered or to be wagered, while illegal under Pennsylvania law, was not "gambling" as defined in 18 U.S.C. § 1955(b)(2). The court noted:

> This argument is flawed. The relevant definition for our purposes is that of an "illegal gambling business," provided for in 18 U.S.C. § 1955(b)(1), not the definition of "gambling" provided for in § 1955(b)(2). The jury found that [the defendant] violated 18 Pa. Cons. Stat. § 5514(4), and therefore operated an "illegal gambling business" as defined by 18 U.S.C. § 1955(b)(1). We have held that the mere custodianship of gambling-related funds is sufficient to constitute a violation of 18 U.S.C. § 1955, because such custodianship is considered to be "gambling" under state law

>       even though it may not appear to fit within
>       "gambling" as defined in § 1955(b)(2).

Id. at 372.

Earlier this year, Judge Kaplan in the Southern District of New York considered the issue in the context of an indictment relating to internet poker. United States v. Elie, 2012 WL 383403 (S.D.N.Y. Feb. 7, 2012). The defendants in that matter moved to dismiss the indictment on the basis that poker does not constitute gambling using arguments that were essentially identical to the one made by the defendant here.

Addressing what it termed "the surprising argument that poker is not gambling," the court noted that the indictment alleged activities "that included the conduct of gambling business in violation of New York and other state laws," the court denied the defendants' motion to dismiss the indictment. Id. at *2-3. Rejecting the defendant's motion, the court held that "[i]f poker constitutes gambling as a matter of law, defendants are not entitled to dismissal of the IGBA counts. If it instead raises an issue of fact, it is a matter for trial, not disposition on a motion addressed to the indictment." Id. at *3.

The government respectfully submits that the defendant's strained reading of the IGBA is untenable. Under his theory, courts, whenever confronted with a game that is not in the illustrative list set forth in § 1955(b)(2), would be required to conduct an analysis in which certain "features" of the unlisted game are compared with "features" of the various exemplars, even where the unlisted game is indisputably a proscribed form of gambling under the referenced state law. This would add a new factual element for the government to prove to obtain a conviction. It would also result in widely divergent interpretations of the law as different courts would understandably arrive at distinct conclusions as to what were the most significant "features" of the activities listed in § 1955(b)(2).

Moreover, the defendant's interpretation of the statute is inconsistent with context in which the IGBA was enacted in 1970. The IGBA came into effect as part of the Organized Crime Control Act, and was not crafted to, as defendants would have it, place a federal imprimatur on what activities constitute gambling (a matter traditionally left to the states), but rather to address Congress's finding that, where a state had outlawed a particular form of gambling, "organized crime had developed complex channels" to capitalize on the opportunity presented. United States v. Sacco, 491 F.2d 995 (9th Cir. 1974) (discussing

legislative history). As such, the IGBA was "designed to aid the enforcement of state law" where the state had identified the gambling business as illegal while at the same time "exempt[ing] from the federal statute the operators of gambling businesses that are not contrary to a state's public policy on gambling." United States v. Farris, 624, F.2d 890, 892, 895 (9th Cir. 1980).[1]

Given this rationale, Congress had little interest in actually defining what constituted gambling, which explains its decision to reference state law, but significant interest in ensuring that the IGBA reached whatever form of gambling a state had seen fit to ban.  In contrast, under the defendant's theory, the IGBA would pick and choose which types of gambling outlawed by the states could also be the basis of violating federal law, based on an ad hoc analysis of how similar or dissimilar the game was to those listed in IGBA's list of examples.  This would create an extraordinarily complex and unpredictable approach to the statue that makes no sense given the IGBA's structure and underlying purpose to be essentially co-extensive with state law determinations as to what type of gambling is lawful.  Accordingly, the more sensible conclusion is that when Congress stated that gambling under the IGBA "includes but is not limited to" particular games it meant just what it said: that it was offering a non-exhaustive list of examples of gambling -- not attempting to redefine the general term. See Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there").

Notably, the defendant cites no cases that support his position that, in essence, a new factual element should be added to § 1955 or that support his conclusion that poker is not "gambling" under § 1955, despite the IGBA's 40-year history.  Further, the defendant suggests that prosecutions brought under

---

[1]  The fact that a state might determine that poker should not be covered under its gambling laws actually supports the IGBA's purpose: in any such state, the IGBA would not restrict the application of what the state had determined to permit.  The Government, however, is aware of only one state court, in a decision that was not subsequently reversed on appeal, to have held that its gambling laws did not cover poker, and that case is presently under review by the South Carolina Supreme Court. See Town of Mt. Pleasant v. Chimento, No. 2009-CP-10-001551 (S.C. Ct. App. Oct. 1, 2009).

the statute that involve poker are distinguishable from the instant case as those cases involved additional charged conduct relating to other gambling such as video poker, dice games, and sports betting. See Def. Memo at 13 n.26. However, this position does not withstand closer scrutiny. There are numerous instances of courts upholding convictions under § 1955 where the lone illegal gambling activity in question was poker. See, e.g., United States v. Rieger, 942 F.2d 230 (3d Cir. 1990) (upholding § 1955 conviction of operator of a high stakes poker operation); United States v. Tarter, 522 F.2d 520 (6th Cir. 1975) (same); United States v. Angiulo, 897 F.2d 1169 (1st Cir. 1990) (upholding § 1955 conviction of individual who received profits from a high stakes poker operation); United States v. Zemek, 634 F.2d 1159, 1177-78 (9th Cir. 1980), (affirming conviction of defendant on a count alleging that the defendant operated a poker game for approximately 6 weeks); United States v. Dey, 2009 WL 1730956, 07-CR-725 (JBW) (E.D.N.Y. June 18, 2009)(providing statement of reasons for sentence imposed on defendant for violation § 1955 for operating an illegal gambling business of poker games in violation of New York Penal Laws § 225.05 and 20); United States v. Dono, 2009 WL 2405886, 07-CR-725 (JBW) (E.D.N.Y. Aug. 3, 2009)(same); see also United States v. Trupiano, 11 F.3d 769, 772 (8th Cir. 1993)(upholding IGBA conviction of operator of a high stakes "gin rummy" card playing operation where his profit derived solely from his and his partners' skill at winning money from new players recruited to the game). Additionally, the Second Circuit has upheld the application of the IGBA to gambling businesses offering video poker. See, e.g., United States v. Gotti, 459 F.3d 296, 342 (2d Cir. 2006) (affirming IGBA conviction for operating video poker machines, and specifically rejecting argument that IGBA and referenced New York gambling law did not apply to games that involved an element of skill).

Here, the defendant is asking the Court to ignore: (i) that courts throughout the country have affirmed convictions under the IGBA where the relevant conduct was related to poker; (ii) that New York law considers poker to be gambling; and (iii) that § 1955(b)(2) makes plain on its face that "gambling" includes, but is not limited to the list of activities set forth in the statute. Instead, the defendant contends that the Court should read into the statute a requirement that conduct can only constitute "gambling" for IGBA purposes if it involves a pure game of chance.[2] Had Congress wished to limit the definition of

---

[2] The government notes that the defendant's characterization of the activities enumerated in the statute as pure games of chance, distinguishable from poker, is inaccurate. For example, "bookmaking" involves sports betting in which the

"gambling" in the way that the defendant suggests, it could have provided an exclusive list of prohibited activity or, alternatively, a more detailed definition of how "gambling" should be defined. It did not. Accordingly, the government respectfully suggests that the Court should reject the defendant's bid to overturn well-settled law and his overly-narrow reading of the definition of "gambling."

IV. The Defendant's Proffered Expert Testimony Should Be Precluded

On July 1, 2012, the government received notice from the defendant of his intention to call Randall Heeb as an expert witness should the Court deny the defendant's motion to dismiss the superseding indictment. For the reasons discussed below, the government respectfully submits that the proffered testimony should be excluded and hereby moves in limine to do so.

A. The Proposed Testimony

Mr. Heeb is a consultant with Bates White LLC, an economic consulting firm. He received a Ph.D from the University of Chicago in economics and has a stated expertise in "antitrust analysis of tying and bundling, exclusive dealing, and complex pricing strategies."[3] In addition, Mr. Heeb's qualifications state that he is an accomplished poker player, having won or placed highly in various poker tournaments. He has published articles and lectured on a number of topics relating to economics and game theory, although the defendant has not directed the government to any material authored by Mr. Heeb that directly relates to poker. Similarly, while Mr. Heeb has apparently previously testified as an expert on antitrust issues and with

---

bettor's knowledge of the sports involved is integral to the betting process. Betting on the outcome of sporting events involves "substantial (not 'slight') skill," including "the exercise of [a] bettor's judgment in trying to ... figure [out] the point spreads." Office of the Attorney General of the State of New York, Formal Opinion No. 84-F1, N.Y. Op. Atty. Gen 11 (1984). Nor, contrary to the defendant's position, are all of the activities identified in the statute "house-banked" games in which the house bets against the players. As with poker, the house's take in certain lotteries and pools, as well as in book making, is often a percentage of the total volume of bets, and is not dependent on playing "against" the bettor.

[3] See Exhibits 1 and 2.

respect to damages, the defendant has not identified any instance in which he has previously testified relating to poker.[4]

Mr. Heeb intends to testify about the "impact of skill on the game of poker" in support of the defendant's position that poker is a game of skill as opposed to a game of chance and thus is not "gambling." For the reasons set forth below, his testimony should be precluded.

B.  The Legal Standard

Expert testimony is governed by Rules 702 and 703 of the Federal Rules of Evidence. Rule 702 of the Federal Rules of Evidence permits opinion testimony by an expert if his or her "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue." Rule 703 states in relevant part that "facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."

"In deciding whether to allow the witness to give expert testimony the primary issue is whether the expertise provides the witness with the ability to assist the finder of fact in deciding the issues before it. This inquiry is subsumed within the broader "relevance" analysis governed by Rule 401." In re Zyprexa Products Liability Litigation, 489 F. Supp. 2d 230, (E.D.N.Y. 2007) (JBW). The court must ensure that the proposed expert testimony is relevant and will "assist the trier of fact to understand the evidence or to determine a fact at issue." Fed. R. Evid. 702.

Expert testimony that will assist the trier of fact is also subject to Rule 403 and "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Because "expert evidence can be both powerful and quite misleading" the court "exercises more control over experts than over lay witnesses" when assessing the evidence's

---

[4] Given that Mr. Heeb has apparently not testified about the subject of his proffered testimony previously, the government reserves the right to challenge his qualifications as an expert at the Daubert hearing scheduled before the Court on July 6, 2012.

9

prejudice against its probative value. <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579, 595 (1993). "The Supreme Court...has noted the uniquely important rule that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." <u>Nimely v. City of New York</u>, 414 F.3d 381, 397 (2d Cir. 2005).

    C.    <u>The Proffered Expert Testimony Will Not Assist the Jury in Understanding The Evidence or Determining a Fact in Issue</u>

The Court should exclude Mr. Heeb's testimony because his opinion will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

As discussed above, poker is undisputably "gambling" under New York law. Further, there is no requirement under the IGBA for the government to prove that charged gambling, here poker, is substantially similar in nature to the non-exhaustive list of gambling activities provided as examples in § 1955(b)(2). As such, Mr. Heeb's proffered testimony on the impact of skill on poker would be irrelevant to facts at issue before the jury in this case.

The defendant does not suggest, nor could he, that Mr. Heeb's purported expertise is necessary for the jurors to understand the operations of the illegal gambling operation in Staten Island. Indeed, Mr. Heeb does not profess any expertise in the operation of an illegal gambling business such as the one run by the defendant.

Nor does the defendant claim that Mr. Heeb's testimony will be necessary for the jury to understand how poker is played. Again, there is no meaningful basis to claim that jurors would be unable to understand how the game is played without the benefit of expert testimony. Indeed, the <u>amicus curiae</u> brief filed in support of the defendant's motion by the Poker Players Alliance contends that as many as 55 million Americans play poker and notes poker's storied and lengthy history in American culture. <u>See</u> Memorandum of Law of <u>Amicus Curiae</u> Poker Players Alliance in Support of Defendant Lawrence DiCristina's Motion to Dismiss Superseding Indictment at 8-9. Given the game's wide penetration into American society, the jury will not require Mr. Heeb's "scientific, technical, or other specialized knowledge" to understand that poker that was being played at the defendant's

10

gambling operation or to understand how that poker was played. Fed. R. Evid. 702.[5]

The proffered testimony would not aid the jury with respect to any material fact at issue.  See Nimely v. City of N.Y., 414 F.3d 381, 397 (2d Cir.2005).  As such, his testimony, far from illuminating factual questions for the jury, would instead muddle the issues before them by suggesting to the jurors that in order to decide the defendant's guilt, they must decide whether poker is a game of chance or a game of skill.  Such testimony would unfairly prejudice the jurors in favor of jury nullification by improperly suggesting that if poker is less of a game of chance than say, a lottery, that this may make the defendant less culpable.  As outlined above, this is inconsistent with the law that governs this case.  As such, Mr. Heeb's testimony will confuse, prejudice and mislead the jury and, as such, preclusion under Rule 403 is appropriate.  See, e.g., United States v. Hashmi, 2009 WL 4857608, *2 (S.D.N.Y. Dec. 11, 2009) (precluding the testimony of the defendant's expert on various grounds, including that the testimony "seems geared toward precisely that result and designed to invite nullification-an impermissible purpose"); see also United States v. Awan, 2007 WL 1988382 at *6 (S.D.N.Y. July 3, 2007) (same).

Finally, if the defendant calls Mr. Heeb, the government reserves the right to ask the Court for leave to call its own expert, which will not only prolong the trial but will constitute a burdensome trial within a trial on an issue of only limited probative value, if any.

---

[5]  Indeed, expert testimony on this issue would be inappropriate as when testimony is "directed solely to 'lay matters which a jury is capable of understanding and deciding without the expert's help,' ... the testimony is properly excludable." United States v. Castillo, 924 F.2d 1227, 1232 (2d Cir. 1991) (quoting Andrews v. Metro-North Commuter R.R. Co., 882 F.2d 705, 708 (2d Cir. 1989)).

11

V.      Conclusion

      For the reasons set forth above, the government respectfully submits that the defendant's motion to dismiss the indictment should be denied and that the proffered testimony of his expert should be precluded.

      Respectfully submitted,

      LORETTA E. LYNCH
      United States Attorney
      Eastern District of New York

By:      /s/
      Marisa Megur Seifan
      Nathan Reilly
      Assistant U.S. Attorneys
      (718) 254-6008/6196

Attachments

cc:  Kannan Sundaram, Esq. (via email)