# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

July 6, 2012

**By Hand Delivery and ECF**
The Honorable Jack B. Weinstein
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn New York 11201

Re:   **United States v. Lawrence Dicristina**
      **11-CR-414 (JBW)**

Dear Judge Weinstein:

In anticipation of today's *Daubert* hearing, the defense writes in response to the government's July 5th motion to preclude the defense's proffered expert testimony by Randal Heeb, Ph.D., on the impact of skill in the game of poker (See Govt.'s Letter dated July 5, 2012, Doc. 76).

The government contends that the Court should exclude Dr. Heeb's testimony because his opinion will not help the trier of fact to understand the evidence or to determine a fact in issue as required by Federal Rule of Evidence 702 (*Id.*). This is so, the government says, because poker is "undisputably 'gambling' under New York law" and "there is no requirement under the IGBA for the government to prove," in addition to that, that it also meets the definition of "gambling" under the IGBA definition (*Id.*).

The government's argument should be rejected. Whether poker constitutes "gambling" under the IGBA is a question of fact for the jury. It is beyond dispute that the jury must decide whether the essential elements of an offense have been proven, and that whether the defendant's business involves "gambling" is an essential element of the IGBA offense. It follows that the jury has the power to determine whether poker constitutes gambling, and that the parties must therefore be able to present evidence on that question.

The remaining question is *how* the jury should be instructed, which turns on the meaning of the IGBA's definition of "gambling." The government argues that the Court should hold that poker is "gambling" as a matter of law, the jury should be instructed that poker is gambling, and the jury's inquiry should be limited to whether defendant conducted a poker game. This Court's

1

initial proposed jury instructions appear to accept that approach as well. However, binding precedent regarding the role of the jury, as well as the text, structure, and history of the IGBA foreclose that option.

Under the IGBA, poker can only be gambling – and defendant can only be convicted – if the jury finds that poker is sufficiently similar to the other activities listed in the IGBA's definition of gambling. At a minimum, defendant can only be convicted of gambling under the IGBA if the jury finds that poker constitutes gambling under the common law definition of the term, under which chance must predominate over skill in determining the outcome. Under this standard, Dr. Heeb's expert testimony, which speaks directly to the rules and nature of poker, and to the role that chance and skill play in determining the outcome of the game, is directly relevant to the question before the jury, *i.e.*, whether poker is "gambling" under the IGBA.

Independently, the IGBA requires the government to prove that the alleged gambling business violated the law of a state or political subdivision in which it was conducted. In this case, the government has alleged a violation of the New York Penal Law, which makes it unlawful to conduct a "contest of chance." Dr. Heeb's testimony is directly relevant to whether the poker games allegedly conducted here were contests of chance under New York law, and should be admitted for that purpose.

1. **The Jury Must Find All Essential Elements of an Offense**

The Fifth and Sixth Amendments permit the state to deprive citizens of their liberty only when a jury has determined that all elements of a criminal charge have been proven beyond a reasonable doubt. *United States v. Gaudin,* 515 U.S. 506, 512-13 (1995), held that where an element of a crime requires the application of a legal standard to a particular set of facts, it is the job of the jury, not the court, to determine whether that standard has been met: "the jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." *Id.* at 514. Later, in *Apprendi v. New Jersey,* 530 U.S. 466, 484-85 (2000), the Supreme Court expressed its concern that the Constitutional right to a jury was eroding in practice because judges were determining certain elements of penal statutes. In order to safeguard against this erosion of the jury right, the Supreme Court held that "practice must at least adhere to the basic principles undergirding the requirements of trying to a jury all facts necessary to constitute a statutory offense, and proving those facts beyond a reasonable doubt." *Id.* at 483-84.

The Second Circuit and other Courts of Appeals recognized the "dramatic changes wrought by *Apprendi.*" *Coleman v. United States,* 329 F.3d 77, 83 (2d Cir. 2003); *United States v. Walker,* 299 F. App'x 273, 275 (4th Cir. 2008) (noting that "*Apprendi* and the cases that followed it, of course, significantly changed the legal framework in criminal cases"); *United States v. Kuehne,* 547 F.3d 667, 681 n.4 (6th Cir. 2008) (explaining that the Supreme Court "has breathed new life into the right to a jury trial in [*Apprendi*]"). Thus, in *United States v. Parkes,* 497 F.3d 220, 227 (2d Cir. 2007), the court rejected the government's argument that a court could find, as a matter of law, that a drug-related robbery necessarily involved an effect on

2

interstate commerce; instead, the court held that "[p]roving an effect on interstate commerce is . . . an element of a Hobbs Act offense, which must be proven beyond a reasonable doubt to a jury." Similarly, in *United States v. Baker*, 262 F.3d 124, 128 (2d Cir. 2001), the Second Circuit vacated a conviction for murder with intent to obstruct justice under 18 U.S.C. § 1512(a)(1) because the jury was not instructed as to the definition of a murder. *See also Medley v. Runnels*, 506 F.3d 857, 864 (9th Cir. 2007) (vacating sentence enhancement based on discharge of a "firearm" during a felony because court impermissibly instructed jury that a flare gun is a "firearm" under state law rather than requiring jury to make that determination); *United States v. Hohn*, 8 F.3d 1301, 1307 (8th Cir. 1993) (affirming that in prosecution under statute prohibiting sale of drugs near a school, "[t]he final determination as to whether Central Park met the statutory definition of school was . . . a question of fact appropriate for the jury").

The Second Circuit recently reiterated the rule that the jury must find all essential elements of an offense in *United States v. Banki*, __ F.3d __, 2012 WL 539962 (2d Cir. Feb. 21, 2012). In that case, the defendant engaged in money transfers with family members in Iran through an intermediary called a "hawala." The government charged the defendant under 18 U.S.C. § 1960, which proscribes operation of an unlicensed "money transmitting business." The court instructed the jury that a "hawala is a money transmitting business." The Second Circuit vacated the conviction because by so instructing the jury, the "district court arguably was instructing the jury that if it found that Banki operated a 'hawala,' then he necessarily operated a money transmitting business, thereby taking the latter issue away from the jury." *Id.* at *13.

## 2. Whether Defendant's Business Involved "Gambling" Is an Essential Element of the IGBA Offense

The IGBA provides that "[w]hoever conducts, finances, manages, supervises, directs or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 1955(a). The statute defines an "illegal gambling business" as "a gambling business" that violates state law, involves five or more persons, and has been in operation for 30 days or had gross revenue of $2,000 in any single day. 18 U.S.C. § 1955(b)(1). "Gambling" is defined as including but not limited to "pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein." 18 U.S.C. § 1955(b)(2).

The statutory text establishes beyond a doubt that to prove a violation of IGBA, the government must first prove beyond a reasonable doubt that defendants conducted, financed, managed, supervised, directed, or owned a "gambling business" and then separately prove that the business was illegal because, among other things, it violates state law. A business is not a "gambling business" under federal law if it does not involve conduct that meets IGBA's definition of "gambling." 18 U.S.C. § 1955(b)(2).

The legislative history of IGBA confirms that Congress intended "gambling" as defined under the statute to be a separate element of the offense. Senator Allott explained that IGBA "defines an 'illegal gambling business' as one including such forms of betting as bookmaking or

3

numbers *and* which first, is a Violation of State law; second, involves five or more persons . . . ." 116 Cong. Rec. 603 (daily ed. Jan. 21, 1970) (statement of Sen. Allott) (emphasis added).

In *United States v. Hunter,* then-Judge Stevens also recognized that the federal definition of gambling is a separate element from illegality under state law: "As defined in the statute, 'gambling' includes but is not limited to 'pool-selling, book-making, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.' In this case, appellants concede that their activities *constituted 'gambling' as so defined, and* that they were conducted in violation of the law of Indiana." 478 F.2d 1019, 1021 n.2 (7th Cir. 1973) (emphasis added). Judge Stevens thus clearly recognized that the federal definition of gambling and illegality under state law are separate elements. *See also Sanabria v. United States,* 437 U.S. 54, 70, 98 S. Ct. 2170, 2182 (1978) (holding that the "allowable unit of prosecution under § 1955" is participation in a "gambling business" which business must then violate state law); *United States v. Kaczowski,* 114 F. Sup 2d 143, 152 (W.D.N.Y. 2000) (identifying definition of conduct as "gambling" as a separate element from illegality under state law).

Treating the factual determination of whether the charged conduct constitutes "gambling" as a separate element of the offense before reaching the other elements is consistent with the identification of the elements of an IGBA charge by the United States Attorney in the Southern District of New York. In *United States v. Lawrence,* 07 CR 597 (S.D.N.Y. June 29, 2007), the United States Attorney's Office expressly identified during a plea colloquy that knowingly conducting an illegal gambling business tinder federal law is a separate element from the violation of state law, stating:

> The second object of the conspiracy is to violate the Illegal Gambling Business Act. That also has four elements. The first is that a violator knowingly conducts an illegal gambling business. The second, that that illegal gambling business violate the laws of a state. Here the laws at issue are the laws of the State of New York. Third, that the business involved five or more people who conduct the business, and, fourth, that the business is in substantially continuous operation for more than 30 days, or has a gross revenue of $2,000 in any single day.

*See* Transcript of Plea Colloquy, at 16.

Because it is an essential element of the IGBA offense that the defendant's business be involved in "gambling," the government must prove that element to the jury beyond a reasonable doubt.

### 3.   Whether Poker Constitutes "Gambling" Is a Mixed Question of Fact and Law, and Thus Reserved for the Jury

Having established that the government must prove to the jury that the defendant's business involved gambling, the question remains whether the court or the jury can decide whether the poker games at issue here constitute "gambling" within the meaning of the IGBA.

4

Because that question involves the application of law to fact, it is exactly the sort of "mixed question" that is "especially well-suited for jury determination." *Zheng v. Liberty Apparel Co., Inc.*, 617 F.3d 182, 185 (2d Cir. 2010); *see also Gaudin*, 515 U.S. at 514 ("[T]he jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence."). Thus, this Court should instruct the jury that in order to convict defendant, *it* must find that poker constitutes gambling, as that term is defined under the IGBA. It is not permissible, as the government suggests, and as this Court's proposed jury instructions imply, for this Court to make that conclusion in the jury's stead, any more than it would be appropriate for the Court to instruct the jury that drug-related robberies affect interstate commerce, *see United States v. Parkes*, 497 F.3d 220, 227 (2d Cir. 2007), or for the Court to instruct the jury that a hawala is a money transmitting business, *see United States v. Banki*, __ F.3d __, 2012 WL 539962, at *13 (2d Cir. Feb. 21, 2012).

The IGBA defines "gambling" by providing that it "includes, but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein." 18 U.S.C. § 1955(b)(1). As explained in defendant's motion to dismiss, Congress's illustrative list limits the federal definition of "gambling" to activities that are similar in kind to the enumerated ones. Under the canon of *ejusdem generis*, Congress's list creates a test: it restricts the federal definition of gambling to the sorts of house-banked casino games, lotteries, and sports betting operations that constituted one of the primary sources of revenue for organized crime groups when the IGBA was enacted. *Cf. Begay v. United States*, 553 U.S. 137, 148 (2008) (holding that the Armed Career Criminal Act's illustrative definition of a "violent felony" extends only "to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves.").[1]

Defendant's motion to dismiss highlighted the key characteristics of the enumerated activities: all of them are either house-banked or lottery games, and all of them are games of chance, not skill. Thus, for an activity not on the list to fall within the statutory definition of "gambling," it must also exhibit these characteristics. Determining whether those characteristics are present requires a factual assessment of the relevant poker games, and therefore falls to the jury.[2]

The government has argued that the IGBA does not include any independent definition of gambling at all, but instead merely looks to state law to determine what constitutes "gambling." That reading is at war with the text of the statute. First, it is plain that Congress *did* include a federal definition of gambling, and that this definition is distinct from the statute's requirement that the gambling business violate state law. "[T]he principle is well established that, unless Congress plainly manifests an 'intent to incorporate diverse state laws into a federal statute, the

---

1 That IGBA uses the phrase "includes, but is not limited to" does not alter this analysis. *See Molloy v. Metro. Transp. Auth.*, 94 F.3d 808, 812 (2d Cir. 1996) (with respect to statute defining "alteration" as "a change to an existing facility, including, but not limited to" seven enumerated examples, court held that only changes "similar to the specific items in the list" were captured by the statute).

2 This argument is consistent with defendant's motion to dismiss because the government has not alleged—nor could it—that the poker games at issue here were house-banked, and it likewise has not alleged that the poker games at issue here are games of chance. Thus, while this Court can hold that the indictment is insufficient as a matter of law, it cannot hold that an element of the offense has been satisfied as a matter of law.

meaning of [a] federal statute should not be dependent on state law.'" *See Spina v. Dep't of Homeland Security*, 470 F.3d 116, 126 (2d Cir. 2006) (quoting *United States v. Turley*, 352 U.S. 407, 411 (1957)). Here, Congress manifested its intent to incorporate state law in *part* of the IGBA, but critically not in the definition of "gambling," and this Court should, consistent with binding precedent, hold that the federal laws imposes its own requirements. *See, e.g., United States v. Campbell*, 167 F.3d 94, 97 (2d Cir. 1999) (holding that when evaluating enhanced penalties for reentry into the United States due to earlier convictions of a felony under state law, "the matter of [w]hether one has been 'convicted' within the language of [federal] statutes is necessarily . . . a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State").3

Second, adopting the government's reading of the statute would impermissibly read the definition of "gambling" out of the law. It is a "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc.* v. *Andrews*, 534 U.S. 19, 31 (2001). In enacting the IGBA, Congress deliberately included a list of illustrative examples of "gambling." If it had intended for the statute to be "all-encompassing, it is hard to see why it would have needed to include the examples at all." *Begay*, 553 U.S. at 142.

In support of its argument, the government cites cases upholding IGBA convictions involving poker. *See, e.g., United States v. Rieger*, 942 F.2d 230 (3d Cir. 1990). However, these cases are distinguishable, as it does not appear that any defendant in any one of these cases ever argued that poker was not gambling. *See Webster v. Fall*, 266 U.S. 507, 511 (1924) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *see also Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 49 (2d Cir. 2000) (same). Moreover, the vast majority of the government's cited cases were decided before *Apprendi*, which makes their precedential value suspect.

The government also relies on *United States v. Atiyeh*, 402 F.3d 354 (3d Cir. 2005), in which the Third Circuit held that being a custodian of funds used in betting or wagering constituted gambling because it was unlawful under state law. However, *Atiyeh* is both distinguishable and likely wrongly decided. The case is distinguishable because the underlying gambling activity in that case was bookmaking, which is enumerated as gambling under the IGBA. Thus, the defendant's custodianship of the funds was plainly incidental to a gambling business. The fact that he had not been charged with a bookmaking offense under state law is immaterial, because the federal statute imposes its own requirement. *Atiyeh* was also likely wrongly decided for the reasons set forth above: the court's decision to read the statutory definition of "gambling" out of the IGBA violated Congress's intent, and should not be regarded as persuasive.

If this Court agrees with the government that the enumerated activities in the IGBA's

---

3 Limiting the reach of IGBA to federally-defined gambling businesses is necessary given that 18 U.S.C. § 1955(b)(1)(i) is not, on its face, limited to state *gambling* laws. State illegality is also not determinative because even if a state decided to criminalize chess or stock trading as gambling, it would be absurd to construe the IGBA – which was enacted in order to target organized crime entities – to reach those activities.

definition of "gambling" do not meaningfully restrain the definition of "gambling," then it should hold in the alternative that in enacting the IGBA, Congress adopted the common law definition of "gambling." "[W]hen Congress uses language with a settled meaning at common law, Congress presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." *Beck v. Prupis*, 529 U.S. 494, 500-01 (2000).

"Gambling" is a term with an established meaning at common law—that meaning requires three elements: consideration, chance, and a prize. *Att'y Gen. v. PowerPick Club*, 793 N.W.2d 515, 533 (Mich. Ct. App. 2010); *see also Barber v. Jefferson Cnty Racing Ass'n, Inc.*, 960 So.2d 599, 616 (Ala. 2006). Furthermore, in the common law, "chance" means "a lack of control over events or the absence of a controllable causation—the opposite of intention." *Barber*, 960 So. 2d at 609 (citing *Opinion of the Justices*, 795 So.2d 630, 635 (Ala. 2001)). Courts addressing the element of chance under the common law standard have concluded that chance must be "the dominant factor in a participant's failure or success in any particular game or scheme" for the element to be satisfied. *Opinion of the Justices*, 795 So.2d at 641.[4]

Whether chance is dominant in determining the outcome of any particular game is a question of fact that may vary according to the specifics of the game under consideration and the nature of the proof offered. Thus, at a minimum, in order to show that poker constitutes "gambling" under the IGBA, the government must prove – to the jury, and beyond a reasonable doubt – that chance predominates over skill in determining the outcome of poker.

In sum, because whether poker constitutes "gambling" is an essential element of the IGBA offense, the government must prove it to the jury beyond a reasonable doubt. To do so, the government must establish that poker exhibits sufficient similarities to the enumerated activities in the IGBA's definition of gambling. At a minimum, the government must show that poker at least meets the common law definition of gambling, which requires it to prove as a matter of fact that chance predominates over skill in determining the outcome of the game.

4. **Dr. Heeb's Testimony Is Directly Relevant to Whether Poker Is "Gambling" Under the IGBA**

Dr. Heeb's testimony is relevant to whether poker constitutes "gambling" under the IGBA. Whether the Court construes the statute according to the *ejusdem generis* canon, or in light of the common law meaning of gambling, the role of chance in a game is crucial to determine whether the game constitutes gambling. Dr. Heeb's expert report is geared primarily at demonstrating that skill predominates over chance in determining the outcome in poker, so that it cannot be gambling under the statute.

---

4 Although a reading based on the common law definition of "gambling" is inferior to the reading described *supra* because it does not give due weight to the illustrative list of gambling activities in the IGBA, it is nonetheless far superior to the government's attempt to ignore the IGBA's plain language and rely exclusively on individual state laws to define "gambling" for purposes of the federal statute.

5. **Dr. Heeb's Testimony Is Directly Relevant to Whether the Alleged Gambling Business in this Case Violated State Law**

Independently, Dr. Heeb's expert testimony is also directly relevant to whether poker meets the IGBA's state law predicate requirement – *i.e.*, that the gambling business must be "a violation of the law of a State or political subdivision in which it is conducted." 18 U.S.C. § 1955(b)(1)(i). To prove that element, the government must prove that the poker games allegedly played at 3741B Victory Boulevard violate the New York Penal Law. Thus, the government must prove that these poker games constituted a "contest of chance" under New York's criminal gambling statute. *See* N.Y. Penal Law § 225.00(2).

The New York Penal Law provides that a "contest of chance" is "any contest, game, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." *Id.* § 225.00(1). New York courts have explained the test as follows:

> [W]hile some games may involve both an element of skill and chance, if "the outcome depends in a material degree upon an element of chance," the game will be deemed a contest of chance. "The test of the character of the game is not whether it contains an element of chance or an element of skill, but which is the *dominating element* that determines the result of the game?" It follows then that wagering on the outcome of a game of skill is therefore not gambling as it falls outside the ambit of the statute.

*People v. Li Ai Hua*, 885 N.Y.S.2d 380, 384 (N.Y. City Crim. Ct. 2009) (emphasis added) (citations omitted).5  Dr. Heeb's testimony assesses the relative influence of chance and skill in Texas Hold'Em poker games, which are practically identical to those allegedly conducted at 3741B Victory Boulevard. He "conclude[s] that skill predominates over chance in poker." Heeb Report at 3 ¶ 8. The alignment between the New York legal test and Heeb's report demonstrates the relevance of his testimony.

The government responds essentially by arguing that poker is gambling per se under New York law. In support, it cites several New York cases that have stated, typically in *dicta*, that poker is gambling. However, those cases are not precedential here, because the question whether poker is "gambling" is a question of fact, not law. *See S. & F. Corp. v. Wasmer*, 91 N.Y.S.2d 132, 136 (N.Y. Sup. Ct. Onondaga Cnty. 1949). Moreover, each of the cases cited by the government is either distinguishable, or flawed and unpersuasive.

The government quotes at length from *People v. Turner*, 629 N.Y.S.2d 661 (N.Y. Crim. Ct. 1995). However, as *amicus* Poker Players Alliance explained, the quoted language from *Turner* is *dictum*, because the case itself did not deal with poker, but with a "shell game," which is a variant of three-card monte. *See* PPA Amicus Br. at 18 n.16. Additionally, the *Turner* court's holding was flawed because it was based on an analysis of precedent relating to *video*

_____

5 The Poker Players Alliance, in its *amicus* brief, to which the government itself alluded in its letter to the Court, *see* Gov't Letter at 10, has set forth the legal standard in detail. Defendant accepts that analysis, and there is no need to repeat it here.

8

*poker*, which much more closely resembles a slot machine than it does the peer-to-peer poker games at issue here. *Id.*; *see also United States v. 294 Various Gambling Devices,* 708 F.Supp. 1236, 1243 (W.D. Pa. 1989) (distinguishing video poker from peer-to-peer poker by explaining that the former involves far less skill). Moreover, the language that the government quotes from *Turner* makes factual claims that defendant intends to refute. *See Turner*, 629 N.Y.S.2d at 662 (stating that "[t]he skill of the player may increase the odds in the player's favor, but cannot determine the outcome regardless of the degree of skill employed."). Defendant intends to establish, using Dr. Heeb's testimony, that skill can and does determine the outcome of poker in numerous ways: for example, by skillfully bluffing, players can win hands that they would not otherwise win; by skillfully betting players can win more money than their less skilled opponents; and by skillfully folding, players can lose less than (and therefore increase their profits versus) their less skilled opponents. In other words, Dr. Heeb's testimony is expected to show that through skill and skill alone, players can, and indeed do, "determine the outcome" of a poker game. *Turner*, 629 N.Y.S.2d at 662.

The PPA brief also demonstrates that *Turner* is questionable authority even for its holding, as other New York courts have held (in decisions the government does not acknowledge) that three-card monte is itself not a contest of chance. *See* PPA Br. at 18, n.16 (citing *People v. Mohammed*, 724 N.Y.S.2d 803, 805-06 (N.Y. Crim. Ct. 2001); *People v. Hunt*, 616 N.Y.S.2d 168, 170 (N.Y. Crim. 1994)). The disagreement among New York courts regarding the status of the same game also underscores defendant's point that past cases – even those holding that poker constitutes gambling under New York law – are not precedential here, and that the jury in this case must resolve the issue based on the evidence in *this* case, not the evidence submitted (or not submitted) to other courts. That is how the New York Penal Law has always worked, and the government provides no justification for a different procedure here.

In addition to *Turner*, the government cites *dictum* in the unpublished disposition from *People v. Jun Feng*, 946 N.Y.S.2d 68 (N.Y. City Crim. Ct. 2012), stating that "stud" poker "is a game of chance." For the reasons explained in the PPA's brief, *Feng* is not precedential and not persuasive. *See* PPA Br. at 16 n.14. But even if it were, the *dictum* in *Feng* does not reach this case, which does not involve "stud" poker, but instead involves Texas Hold'Em poker – a different game. The government also cites *People v. Dubinsky*, 31 N.Y.S.2d 234, 237 (Ct. Special Sessions 1941), an antiquated case also involving "stud" poker, as well as *In re Fischer*, 247 N.Y.S. 168, 178-79 (N.Y. App. Div. 1930), an attorney discipline case that stated, without analysis, that all games of cards are "technically gambling," and *Katz's Delicatessen, Inc. v. O'Connell*, 302 N.Y. 286 (1951), a case applying the state liquor laws which stated, without any discussion, that poker was gambling.

Importantly, none of these last cases considered the definition of a "contest of chance" set forth in the gambling statute, none of them contain any evidence that the defendant argued that poker was not gambling, and none of them would constitute binding precedent in a New York state case in which the defendant argues that poker is not gambling. And most importantly, none of these cases contradicts the clear rule that the nature of poker as a "contest of chance" is a question of fact, to be determined on a case by case basis based on the evidence presented.

9

In sum, the only way that the Court can decide whether the alleged gambling business at issue here "is a violation of the law of a State or political subdivision in which it is conducted" is to take evidence on whether poker is a "contest of chance" within the meaning of New York law. Dr. Heeb's expert testimony speaks directly to that question.6

Respectfully Submitted,

Kannan Sundaram
Assistant Federal Defender
(718) 330-1203

cc:    Marisa Megur Seifan
       Nathan Reilly
       Assistant U.S. Attorneys

---

6 Although not controlling here, it may be persuasive that the vast majority of states likewise treat the status of any particular game as one of fact for the jury. *See, e.g., Henderson v. State*, 616 So. 2d 406, 410-12 (Ala. Ct. Crim. App. 1993) (holding that the government must prove to the jury the "essential element" of the offense of "promoting gambling" that the activity in question be "gambling activity," and that the State had failed to provide evidence that the Florida lottery constituted gambling activity under Alabama law); *Sutter's Pl., Inc. v. Kennedy*, 84 Cal. Rptr. 2d 84, 90 (Cal. Ct. App. 1999) ("It is a factual question whether a particular game falls within section 330's . . . prohibition.") (internal quotation marks omitted); *People v. Mitchell*, 444 N.E.2d 1153, 1155 (Ill. Ct. App. 1983) (accepting the trial court's conclusion that whether a game qualifies as a bona fide contest of skill, and therefore is not gambling, is a "question of fact"); *Cossack v. City of Los Angeles*, 523 F.2d 260, 264 (Cal. 1974) ("Whether a game is a game of skill or a game of chance depends upon which factor predominates, and this is a fact question for the trial court."); *Morrow v. State*, 511 P.2d 127, 130 (Alaska 1973) ("[T]he question of which element predominates—skill or chance—is for the trier of fact to determine."). Moreover, when considering the factual nature of poker, courts have reached varying conclusions based on the evidence before them. *Compare Chimento v. Town of Mt. Pleasant*, No. 2009-CP-10-001551, at 10 (S.C. Ct. C.P. 2009) (holding that the evidence was "overwhelming" that skill predominates over chance in poker) *and Bell Gardens Bicycle Club v. Dep't of Justice*, 36 Cal. App. 4th 717, 744 (Ct. App. 1995) (poker "predominantly implicate[s] a player's skill"), *with, e.g., Commonwealth v. Dent*, 992 A.2d 190, 197 (Pa. Super. Ct. 2010) (holding that poker is a game of chance).

10